## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

WARD GULFPORT PROPERTIES, L.P., *et al.*                    PLAINTIFFS


v.                                    Civil No. 1:26cv10-HSO-BWR


UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*        DEFENDANTS


### ORDER GRANTING DEFENDANT UNITED STATES ARMY CORPS OF ENGINEERS' MOTION [15] TO STAY AND ADMINISTRATIVELY CLOSING CASE

Defendant United States Army Corps of Engineers ("USACE" or "Defendant") seeks a stay pending publication of a final rule revising the definition of "waters of the United States" as used in the Clean Water Act.   Mem. [16] at 2 (quoting 33 U.S.C. § 1362(7)).   Plaintiffs Ward Gulfport Properties, L.P., and T. Jerard Gulfport, L.L.C. (collectively, "Plaintiffs" or "Ward"), oppose this Motion [15].   *See* Resp. [19].   The USACE's Motion [15] should be granted and this case should be stayed and administratively closed pending the issuance of final action on the proposed rule.

### I.   BACKGROUND

Plaintiffs filed suit seeking injunctive relief after the USACE issued Approved Jurisdictional Determinations ("AJDs") that two parcels of Plaintiffs' property ("Property A" and "Property B") were subject to USACE's jurisdiction, requiring Plaintiffs to obtain a permit under Section 404 of the Clean Water Act, 33

U.S.C. § 1344, prior to any development. *See* Compl. [1] at 1-3. The AJDs identified the presence of waters of the United States ("WOTUS"). *See* Compl. [1] at 2-4. The Court later granted the USACE's Motion [8] for Partial Dismissal of Plaintiff's claims as to Property A, without prejudice for lack of subject-matter jurisdiction. *See* Order [12].

The Complaint [1] asserts that the USACE's finding of wetland and tributary jurisdiction as to Property B is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A)." Compl. [1] at 8. Specifically, they challenge the USACE's finding of "a 'continuous surface connection' between the onsite wetlands and Turkey Creek," *id.*; *see id.* at 9 (citing *Sackett v. Env't Prot. Agency,* 598 U.S. 651 (2023)), and designation of a "relatively permanent tributary" on Property B, *see id.* at 9.

On November 20, 2025, the United States Environmental Protection Agency (the "EPA") and the United States Department of the Army (collectively, the "agencies") published a proposed rule, "Updated Definition of 'Waters of the United States,'" in light of the Supreme Court's recent decision in *Sackett*. 90 Fed. Reg. 52498 (Nov. 20, 2025). The agencies offer a summary of the major provisions of the regulatory action:

> The agencies are proposing to revise the following categories of "waters of the United States" under 33 CFR 328.3 and 40 CFR 120.2 paragraph (a) by deleting the interstate waters category under paragraph (a)(1)(iii) and deleting "intrastate" from the paragraph (a)(5) category for lakes and ponds. In addition, ministerial changes are proposed to add in one place and delete in another place an "or" from paragraph (a)(1) to conform to the deletion of the interstate waters category. In addition, the agencies are proposing to revise the following exclusions: the (b)(1)

2

waste treatment system exclusion, the (b)(2) prior converted cropland exclusion, and the (b)(3) ditch exclusion. The agencies are also proposing to add an exclusion for groundwater at (b)(9). The agencies are also proposing to add definitions of "continuous surface connection," "ditch," "prior converted cropland," "relatively permanent," "tributary," "and waste treatment system" in paragraph (c) of their regulations.

*Id.* at 52499. According to the USACE, the agencies have received more than 200,000 comments on the proposed rule and are in the process of reviewing them. *See* Mem. [16] at 3. It believes that final action on administrative rulemaking will likely occur in "months up to a year" from now. Rebuttal [19] at 3.

The USACE's Motion [15] seeks to stay the case in light of the agencies' rulemaking post-*Sackett*. *See* Mot. [15]; Mem. [16]. The USACE takes the position that the Court should place Plaintiffs' remaining challenge as to Property B in abeyance "pending the Agencies' final action concerning a proposed rule to modify the definition of 'waters of the United States,'" with the USACE providing status reports every 60 days. Mem. [16] at 4. The USACE states that, after publication of the final rule, it could reopen the challenged AJD at Plaintiffs' request, which could resolve this case without further litigation. *See id.* at 4-5. "The requested abeyance would therefore further judicial economy, conserve the parties' resources, and promote the efficient and orderly disposition of this case." *Id.* at 5.

Plaintiffs oppose a stay, arguing that the possibility that the USACE could reconsider its decision after the final rule is published is speculative, that the requested stay is indefinite, and that nothing about the pending rulemaking prevents the Court from reviewing the USACE's final agency action under the Administrative Procedures Act. *See* Resp. [18] at 1. Plaintiffs argue that a stay

3

order of indefinite duration, which is based on a series of speculative future events, exceeds the Court's inherent authority, *see id.* at 2-4 (citing *Texas v. United States Env't Prot. Agency,* 170 F.4th 328, 358 (5th Cir. 2006); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)), and would leave Plaintiffs in the same "regulatory no-man's-land" that has previously been rejected by the Fifth Circuit, *id.* at 4-5 (quoting *Lewis v. United States*, 88 F.4th 1073, 1079 (5th Cir. 2023)).

## II.   DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also, e.g., Young v. State Farm Fire & Cas. Co.*, No. 25-60518, 2026 WL 1749523, at *2 (5th Cir. June 17, 2026) (per curiam) (citing *Landis*, 299 U.S. at 254). "The proponent of a stay bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and a district court "has broad discretion to stay proceedings as an incident to its power to control its own docket," *id.* at 706. A trial court's "judgment range" in making a scheduling decision "is exceedingly wide, for, in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549-50 (5th Cir. 2000) (quotation omitted).

While the parties agree that the AJD will remain a final decision even if a new final rule is promulgated, *see* Mem. [16] at 4; Resp. [18] at 1-2, the proposed

4

rule change could eventually moot this case.    The Court recognizes that, for that to happen, Plaintiffs would need to seek reconsideration after the rulemaking process, which they may or may not choose to do.    But if the final rule weighs against the AJD, it would seemingly behoove Plaintiffs to do so, as the definition of WOTUS, which the proposed rule seeks to amend, *see* 90 Fed. Reg. 52498 (Nov. 20, 2025), is the focus of Plaintiffs' claims in this case, *see* Compl. [1] at 8-10.

In addition, this case remains in its infancy, and a request to reconsider at a future date would render whatever actions the Court, the parties, and their counsel had taken up until that point a waste of resources.    A stay would alleviate those concerns and would conserve resources, and Plaintiffs can later decide whether to seek reconsideration before the USACE, which would obviate the need for judicial review, or to simply move to lift the stay and resume this case.    In the meantime, if Plaintiffs sought to develop Property B, they could seek a Section 404 permit.    *See* Rebuttal [19] at 5.    Weighing all of these prospects and considering the parties' positions, the Court agrees that staying the case would result in the most efficient and productive use of time and effort for itself, the parties, and their counsel.    *See* *Landis*, 299 U.S. at 254; *HC Gun & Knife Shows, Inc.*, 201 F.3d at 549-50.

And because the cases Plaintiffs rely upon are distinguishable, the Court is not persuaded by their arguments that the stay would be of indefinite duration, *see* Resp. [18] at 2-4 (citing *McKnight*, 667 F.2d at 479; *Texas*, 170 F.4th at 358), or would leave them in a so-called "regulatory no-man's-land," *id.* at 4-5 (quoting *Lewis*, 88 F.4th at 1079).    Nor is the Court persuaded that a stay would otherwise

"work damage" upon them.   *Landis*, 299 U.S. at 255.

In *McKnight*, the Fifth Circuit vacated the indefinite stay of trial, "until he has been released from incarceration," of a pro se prisoner's 42 U.S.C. § 1983 claims. *McKnight*, 667 F.2d at 478.   McKnight was serving a seven-year term of imprisonment in state prison, but he also had a "federal detainer to complete a federal sentence that might involve an additional seven years in prison."   *Id.*   The Fifth Circuit vacated the stay because it found that the district court gave no reason for a protracted stay of seven years or longer and did not weigh the competing interests in ordering the stay.   *Id.* at 479 (citing *Landis*, 299 U.S. at 255). *McKnight* is distinguishable in several key respects.   The stay in this case is predicted to be one year or less, *see* Rebuttal [19] at 3, which is far shorter than the anticipated stay in *McKnight*, and this Court has weighed the competing interests and explained its reasons for granting a stay, *see McKnight*, 667 F.2d at 479. *McKnight* therefore does not mandate denial of USACE's stay request.   *See id.* And if the rulemaking process lasts longer than the one year forecasted, *see* Rebuttal [19] at 3, Plaintiffs may move to lift the stay.

In *Texas*, the EPA had not promulgated a new rule, distinguishing it from this case.   There, the EPA sought an abeyance "to allow new Agency leadership to review the underlying final rule" and advised the Fifth Circuit that it was possible after its review that the "EPA could take further action that may obviate the need for judicial resolution of some or all of the disputed issues."   *Texas*, 170 F.4th at 358.   Only after the Fifth Circuit denied the request to stay did the EPA issue "a

6

proposed rule and reconsideration of the Final Rule."   *Id.*   Here, the agencies have already issued a proposed rule and received comments; the rulemaking process is proceeding.   *See id.*; Mot. [15]; Mem. [16].   *Texas* is not persuasive.

Nor would a stay of this case leave Plaintiffs in a "regulatory no-man's-land." *Lewis*, 88 F.4th at 1079.   In *Lewis,* "the USACE . . . kept [the plaintiff] in regulatory no-man's-land for over ten years by repeatedly reaching uncertain and unsustainable jurisdictional determinations," including the unilateral withdrawal of an AJD in an effort try to avoid judicial review under *Sackett*, which deprived the landowner of the five-year safe harbor afforded by a negative AJD and created an "endless loop" of regulatory activity.   *Id.*   That is not the case here.   *See id.*   The USACE has not unilaterally withdrawn the AJD as to Property B in an attempt to avoid judicial review.   Instead, it seeks a stay in hopes of conserving the Court's and the parties' resources, by waiting to see what the final rule entails and affording Plaintiffs the opportunity at that time to either seek reconsideration of the AJD under the final rule or proceed with this case.   *Lewis* does not mandate a different approach.

In sum, because the USACE has established the need for a stay and the weight of the competing interests favors one, USACE's Motion [15] should be granted.   The USACE will be required to file a status report on the agencies' progress every 60 days during that stay.   In light of the length of time that these proceedings may be stayed with no activity, the Court is of the opinion that this case should be administratively closed.   Nothing contained in this Order shall be

7

considered a dismissal or disposition of this matter, and the Court retains jurisdiction over the case to allow either party to file a motion to reopen the case and lift the stay.

### III.   CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [15] to Stay filed by Defendant United States Army Corps of Engineers is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is **STAYED and ADMINISTRATIVELY CLOSED** until further order of the Court. Defendant United States Army Corps of Engineers shall file a status report on the Environmental Protection Agency and Department of the Army's progress every **60 days** during the abeyance process.   After publication of the final rule, any party may move to reopen the case and lift the stay.

**SO ORDERED AND ADJUDGED**, this 31st day of July, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE